Peter KALTMAN, Malcolm Lord, Celeste Navon, David W. Ortbals, Paul Steward, Garco Investments, LLP Individually and On Behalf of All Others Similarly Situated, Plaintiffs,

v.

KEY ENERGY SERVICES, INC., Francis D. John, Royce Mitchell, Richard J. Alario, and James J. Byerlotzer, Defendants.

No. MO–04–CV–082.

United States District Court, W.D. Texas, Midland–Odessa Division.

Aug. 11, 2006.

ner, Bilek & Eidman, L.L.P., Houston, TX, Christopher L. Nelson, Darren J. Check, Heather · Tashman, Sean M. Handler, Stuart L.. Berman, Katharine M. Ryan, Michelle N. Paterson, Marc A. Topaz, Schiffrin & Barroway, LLP, Radnor, PA, Michael Klein, Lisa Michaux Magids, Smith Robertson Elliott Glen Klein & Bell, LLP, Austin, TX, Daniel R. Malone, Malone Law Firm, El Paso, TX, Joe Kendall, Provost Umphrey, Dallas, TX, Richard Maniskas, Schiffrin & Barroway, LLP, Bala Cynwyd, PA, for Plaintiffs.

Celeste Navon, Chesterbrook, PA, Pro se.

Andrew Harper Estes, J. Devin Alsup, Andrew Harper Estes, Lynch, Chappell, Allday and Alsup, Midland, TX, Mark Keith, King & Spalding, Brian T. Ross, Laura J. Kissel, Robert R. Burford, Robin C. Gibbs, Gibbs & Bruns LLP, Houston, TX, Bruce W. Collins, Everett Lindell New, Todd A. Murray, Carrington, Coleman, Sloman, & Blumenthal, L.L.P., Melissa J. Swindle, Stephen Mark Dollar, Stephen S. Maris, Jenkens & Gilchrist, P.C., Dallas, TX, for Defendants.

Royal E. Caswell, Jr., Attorney at Law, Odessa, TX, William B. Federman, Dreier, Baritz & Federman, Oklahoma City, OK, for Movant.

## ORDER DIRECTING PLAINTIFFS TO REPLEAD AS TO THEIR CLAIMS AGAINST DEFENDANT BYER- LOTZER AND DEFENDANT ALARIO, AND ORDER DENYING DEFENDANT KEY ENERGY SERVICES, INC.'S, DEFENDANT JOHN'S, and DEFENDANT MITCHELL'S MOTIONS TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

JUNELL, District Judge.

Roger B. Greenberg, Schwartz, Junell, Campbell, et al., Thomas E. Bilek, Hoeff-

Before the Court is the Defendant Key Energy Services, Inc. and Defendant

Richard J. Alario's Motion to Dismiss Consolidated Amended Class Action Complaint (Doc. 67), Defendant Francis D. John's Motion to Dismiss (Doc. 62), Defendant Royce Mitchell's Motion to Dismiss (Doc. 64), and Defendant James Byerlotzer's Motion to Dismiss (Doc. 60). All Motions were filed on January 20, 2006. In Response, Lead Plaintiff Bellaire Castle Corporation[1] filed Plaintiffs' Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss on March 21, 2006. In reply, all Defendants filed various responses to Plaintiffs' Motion. The Court held a hearing on all motions stated above on April 21, 2006. After careful consideration of the Motions, Response, oral argument, and relevant law, the Court is of the opinion that the Defendants' Motions to Dismiss shall be denied as to Defendant Key Energy Services, Inc, Defendant John, and Defendant Mitchell. Further, the Court orders Plaintiffs to replead as to their claims against Defendant Byerlotzer and Defendant Alario in order to comply with Rule 9(b).

## BACKGROUND

Key Energy Services, Inc. ("Key Energy"), the corporate Defendant in this case, is a rig-based, onshore well service company incorporated in Maryland. This suit is a securities-fraud class action. The Lead Plaintiff in this action is Bellaire Castle Corporation ("Plaintiff"). The named Defendants in this action are Key Energy; Richard J. Alario, Key Energy's COO and President from December 1, 2003 to May 3, 2004, and Key Energy's current CEO ("Defendant Alario"); Francis D. John, Key Energy's President until December 1, 2003 and CEO until May 3, 2004 ("Defendant John"); Royce Mitchell, Executive Vice President of Key Energy, and also Key Energy's CFO at all relevant times ("Defendant Mitchell"); and James J. Byerlotzer, Executive Vice President of Key Energy, and Key Energy's COO until December 1, 2003 ("Defendant Byerlotzer"). The proposed plaintiff class consists of all persons and entities who purchased or acquired Key Energy common stock between April 29, 2003 and June 4, 2004 (the Class Period).[2]

In Plaintiffs' Consolidated Amended Class Action Complaint ("Complaint"), filed November 2, 2005 (Doc. 51), Plaintiffs allege violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b–5 promulgated thereunder[3] against all the Defendants named in this action; specifically, the corporate Defendant, Key Energy, along with Defendants John, Mitchell, Alario, and Byerlotzer ("Individual Defendants"). Second, Plaintiffs allege a violation of Section 20(a) of the Exchange Act[4] against the Individual Defendants.

Plaintiffs allege Key Energy and the company's officers/directors overstated the company's financial results. Further, Plaintiffs allege that the Defendants intentionally inflated Key Energy's bottom line profits by capitalizing assets as fixed as-

---

**1.** This action was originally filed as six separate actions (MO–04–CV–082, MO–04–CV–083, MO–04–CV–090, MO–04–CV–104, MO–04–CV–158, and MO–04–CV–159). On February 24, 2005, the Court entered an order consolidating said actions into one case. In the Order, the Court appointed Bellaire Castle Corporation as Lead Plaintiff, and designated MO–04–CV–082 as lead cause number in the case.

**2.** This suit has not yet been certified as a class action at this time.

**3.** *See* 15 U.S.C. § 78j(b); *see also* 17 C.F.R. 240.10b–5.

**4.** *See* 15 U.S.C. § 78t(a).

sets, and shifting current operating expenses and costs to acquisition-related transactions to be capitalized over time, thereby engaging in improper accounting practices. Plaintiffs allege that each of the Individual Defendants, as senior executive officers/directors of Key Energy, had access to information due to their positions with the company, and as officers and controlling persons of the company participated in drafting, preparing, producing, reviewing, and approving various public, shareholder and investor reports, press releases, etc. Plaintiffs argue it was Key Energy's lack of internal controls which led to massive fraud in the South Texas Division, including an elaborate scam to siphon money from the Company under a multi-million dollar program to refurbish twenty-nine rigs.

On March 29, 2004, Key Energy issued a press release announcing it would not file its Annual Report on Form 10–K by the extended deadline of March 30, 2004. According to Plaintiffs, Key Energy announced that a write-down of approximately $78 million of assets was required, which should have been reported in previous years, and as a result Key Energy would restate "one or more prior years financial statements." To date, no such restatement has been filed by the company.

Key Energy's May 3, 2004 press release stated Defendant John was removed from the position of Chief Executive Officer, because Key Energy's Board of Directors determined that the company would be best served by a "transition to a management led by an executive who was not involved in the subjects of the possible restatement of previous financial statements and the Audit Committee investigation." *See* Pls. Compl. ¶ 14. Further, after the filing of Plaintiffs' Complaint, a recent Key Energy press release stated Defendant John was terminated "for cause." *See* Press Release, Key Energy Services (May 22, 2006).

Defendants argue Plaintiffs' Complaint fails to state a Section 10(b) securities fraud claim against the corporate Defendant, Key Energy, and fails to state either a Section 10(b) or a Section 20(a) claim pursuant to the Exchange Act against the Individual Defendants. In response, the Plaintiffs assert they have properly plead all said claims with sufficient particularity.

## STANDARDS FOR MOTIONS TO DISMISS IN SECURITIES LITIGATION

A district court evaluating a motion under Rule 12(b)(6) in a securities fraud action must consider the heightened pleading requirements under Rule 9(b) and the Private Securities Litigation Reform Act (PSLRA).

### A. Rule 12(b)(6)

When reviewing a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), the Court accepts as true all factual allegations made by the Plaintiff in his Complaint. *Kansa Reinsurance Co. v. Congressional Mortgage Corp.*, 20 F.3d 1362, 1366 (5th Cir.1994). Therefore, the Court may only grant the motion if "it appears beyond doubt that the plaintiff can provide no set of facts in support of its claim that would provide a basis for relief." *Oppenheimer v. Prudential Securities, Inc.*, 94 F.3d 189, 194 (5th Cir.1996) (quoting *Woodard v. Los Fresnos Indep. Sch. Dist.*, 732 F.2d 1243, 1245 (5th Cir.1984)).

In addition, a defendant in a Rule 12(b)(6) motion "admits the facts alleged in the complaint, but challenges the plaintiff's right to relief based upon these facts." *Crowe v. Henry*, 43 F.3d 198, 203 (5th Cir.1995) (quoting *Ward v. Hudnell*, 366 F.2d 247, 249 (1966)). In order to avoid

dismissal for failure to state a claim, however, "a plaintiff must plead specific facts, not mere conclusory allegations." *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir.1992) (citations omitted). Thus, the Court will not accept as true conclusory allegations or unwarranted deductions of fact. A dismissal for failure to plead fraud with particularity as required by Rule 9(b) is a dismissal on the pleadings for failure to state a claim. *Southland Securities v. Inspire Ins. Solutions,* 365 F.3d 353, 361 (5th Cir.2004).

### B. Rule 9(b)

Federal Rule of Civil Procedure 9(b) requires plaintiffs in securities fraud actions to plead with particularity the circumstances constituting the alleged fraud. *Southland,* 365 F.3d at 362. Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of a mind of a person may be averred generally." FED. R. CIV. PROC. 9(b). To satisfy Rule 9(b)'s pleading requirements, the plaintiffs must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Id.* (quoting *Nathenson v. Zonagen,* 267 F.3d 400, 412 (5th Cir. 2001)).

### C. Private Securities Litigation Reform Act (PSLRA)

The PSLRA requires that the complaint specify, "each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."

15 U.S.C. § 78u–4(b)(2). Further, to allege scienter under the PSLRA, "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.*

The Fifth Circuit has summarized the requirements for a Plaintiff pleading a false or misleading statement or omission as a basis for a Section 10(b) and Rule 10b–5 securities claim as required pursuant to Rule 9(b) and the PSLRA. *See ABC Arbitrage Plaintiffs Group v. Tchuruk,* 291 F.3d 336, 350 (5th Cir.2002). The Court stated, .... to avoid dismissal pursuant to Rule 9(b) and 15 U.S.C. §§ 78u–4(b)(1) & 78u–4(b)(3)(A) [the Plaintiff must]:

(1) specify each statement alleged to have been misleading, *i.e.,* contended to be fraudulent;

(2) identify the speaker;

(3) state when and where the statement was made;

(4) plead with particularity the contents of the false representations;

(5) plead with particularity what the person making the misrepresentation obtained thereby; and

(6) explain the reason or reasons why the statement is misleading, *i.e.,* why the statement is fraudulent.

*ABC Arbitrage,* 291 F.3d at 350. Further, the *ABC Arbitrage* court added a seventh element:

This is the "who, what, when, where, and how" required under Rule 9(b) in our securities fraud jurisprudence and under the PSLRA. Additionally, under 15 U.S.C. § 78u–4(b)(1), for allegations made on information and belief, the plaintiff must: (7) state with particularity all facts on which that belief is

formed, *i.e.*, set forth a factual basis for such belief.

*Id.*

## DISCUSSION

In general, the Defendants in this case, Defendant John, Defendant Mitchell, Defendant Byerlotzer, and, in a joint Motion to Dismiss before the Court, Defendant Key Energy and Defendant Alario, collectively argue that the Plaintiffs' Complaint fails to state a securities fraud claim against Key Energy, and that the Complaint fails to state Section 10(b) and 20(a) claims pursuant to the Exchange Act against Defendant Alario. In summary, the Defendants argue Plaintiffs' Complaint fails for failure to adequate plead the materiality and falsity of the alleged misstatements. Further, the Defendants argue Plaintiffs' Complaint fails to plead particularly facts that raise a strong inference of scienter.

In response to all Defendants' Motions to Dismiss, the Lead Plaintiff asserts they have properly plead a claim for securities fraud with sufficient particularity. First, Plaintiff argues that the falsity of Key Energy's financial results is conceded by Defendants from their announcement they intend to restate Key Energy's financials for 2003. Second, Plaintiff states that Defendants' false and misleading statements were material in that a restatement does not occur unless the financial results being restated are material. Third, Plaintiff argues they have plead, in total, an overwhelming series of facts that necessarily give rise to a strong inference of scienter.[5] In summary, the Lead Plaintiff asserts that the Plaintiffs have stated a claim for securities fraud, and therefore Defendants' Motion should be denied.

First, the Court shall address Defendants' arguments common to each pertaining to group pleading, as asserted by all the Defendants in their Motions to Dismiss.[6] Second, the Court shall address whether Plaintiffs have sufficiently plead a claim for securities fraud as to all Defendants, and accordingly the Court shall address the Defendants' individual arguments to the extent necessary. Finally, the Court will address the sufficiency of Plaintiffs' claims of controlling liability under Section 20(a) asserted against the Individual Defendants.

## A. Defendants' Allegations of Group Pleading

First, all the Defendants assert in their Motions to Dismiss that Plaintiffs' Com-

---

**5.** Defendants' Motions to Dismiss address only the first three elements of a security fraud claim: falsity, materiality, and scienter. In its Response to Defendants' Motion to Dismiss, the Lead Plaintiff argues that Plaintiffs sufficiently plead the fourth and fifth elements of a securities fraud claim, specifically reliance and causation. *See* Pls. Mot. at 8. Plaintiffs state in their response:

Finally, Defendants concede that Plaintiff sufficiently alleges reliance, as Plaintiff has shown that the fraud-on-the market doctrine applies. Defendants further concede that Plaintiff sufficiently alleges loss causation, because as a direct result of Defendants' admissions and public revelations regarding the true nature of Key Energy's financial results for 2003 and the lack of

internal controls, the prior inflation came out of Key Energy's stock price, damaging Plaintiff and other class members.

*See* Pls. Mot. 8–9. The Court has not determined whether these two elements were in fact conceded by the Defendants. However, as Defendants did not address the elements of reliance and causation in their various replies to Plaintiffs' Motion, for the purpose of this Order the Court will only address the first three elements in dispute at this time.

**6.** Corporate Defendant Key Energy and Defendant Alario filed a joint Motion to Dismiss, and the remaining Individual Defendants each filed their own separate motion outlining the arguments pertaining to each.

plaint relies on "group pleading," a doctrine abolished by the Fifth Circuit in the *Southland* case. The *Southland* court stated:

> [Under the PSLRA] . . . . corporate documents that have no stated author or statements within documents not attributed to any individual may be charged to one or more corporate officers *provided specific factual allegations link the individual to the statement at issue.* Such specific facts tying a corporate officer to a statement would include *a signature on the document or particular factual allegations explaining the individual's involvement in the formulation of either the entire document,* or that specific portion of the document, containing the statement.

*Southland,* 365 F.3d at 365 (emphasis added). The Court noted the PSLRA requires the Plaintiffs to "enlighten *each defendant* as to his or her particular part in the alleged fraud," so that "corporate officers may not be held responsible for unattributed corporate statements solely on the basis of their titles." *Id.*

### 1. *Corporate Defendant Key Energy*

Statements attributed to the Individual Defendants are also treated as having been made by Key Energy, as all statements appear from the face of the Complaint to have been made pursuant to their positions of authority within the company. *See Southland,* 365 F.3d at 365–66. Accordingly, the issue is whether the Plaintiffs sufficiently plead specific facts tying the Individual Defendants as corporate officers to the statements at issue.

### 2. *Defendant John*

As stated above, under *Southland* corporate documents may be charged to one or more corporate officers provided that specific factual allegations link the individual

to the statement at issue. *Id.* at 365. Such specific facts tying a corporate officer to a statement would include a signature on the document or particular factual allegations explaining the individual's involvement in the formulation of the entire document or specific portion of the document containing the statement. *Id.*

First, as to the Company's financial statements, specifically, the 2003 First Quarter 10–Q, the 2003 Second Quarter 10–Q, and the 2003 Third Quarter 10–Q, the Plaintiffs have plead that Defendant John and Defendant Mitchell signed such statements certifying that the statements were truthful, and the controls effective. *See* Pls.' Compl. ¶¶ 95, 97–100, 105–108, 113–116. The Court finds the Plaintiffs have plead specific facts tying these two corporate officers to the financial statements at issue.

Second, Plaintiffs have sufficiently alleged facts tying Defendant John to the statements he made in press releases and conference calls with analysts. *See* Pls.' Compl. ¶¶ 95–96, 102–104, 111–112, 119. Accordingly, the Court finds the Plaintiffs have sufficiently plead specific factual allegations which link Defendant John to the statements at issue. Therefore, the Court finds Defendant John's allegations of group pleading regarding said statements to be without merit.

### 3. *Defendant Mitchell*

As to Defendant Mitchell, the issue is whether the Plaintiffs have sufficiently plead specific factual allegations linking him to the alleged misstatements. Again, the Plaintiffs have plead that Defendant John and Defendant Mitchell signed such statements certifying that the statements were truthful, and the controls effective. *See* Pls.' Compl. ¶¶ 95, 97–100, 105–108, 113–116. The Court finds the Plaintiffs have plead specific facts tying these two

corporate officers to these financial statements. Therefore, the Court finds the Plaintiffs have sufficiently plead specific factual allegations linking Defendant Mitchell to said statements, and, therefore, the Court finds Defendant Mitchell's allegations of group pleading as to these statements to be without merit.

### 4. *Defendant Byerlotzer*

■ In their Complaint, Plaintiffs allege a claim for securities fraud against Defendant Byerlotzer. The Court finds that Plaintiffs have failed to plead with particularity facts supporting such allegations against Defendant Byerlotzer.

First, in contrast to Defendants John and Mitchell, the Plaintiffs do not allege as to Defendant Byerlotzer that he personally made any particular oral false statements, or signed any press releases or SEC forms which contained the alleged misstated earnings.

Second, Plaintiffs' statement in the Complaint that Defendant Byerlotzer "attended forecast budget, and senior management meetings" is insufficient. Such statement is conclusory, and the Court will not accept as true conclusory allegations or unwarranted deductions of fact. Further, Plaintiffs' various statements relating to the fact that Key Energy removed Defendant Byerlotzer from his post of COO around the same time that the company fired the South Texas Division Manager to also be conclusory, and the Court will not accept as true such conclusory allegations or unwarranted deductions of fact.

Furthermore, the Court finds that, as to Defendant Byerlotzer, the Plaintiffs are relying on the group pleading doctrine. As stated before, the Fifth Circuit has rejected the group pleading doctrine, under which a Plaintiff could assert a fraud claim against a corporate officer based on unattributed statements in press releases or financial reports based on the presumption that the company's officers collectively prepared those statements. Plaintiffs have not plead with particularity facts supporting a strong inference of scienter as to Defendant Byerlotzer. Accordingly, the Court requires the Plaintiffs, in order to avoid dismissal of this cause of action, to replead in order to comply with Rule 9(b) within sixty (60) days from the date of this Order. Defendant Byerlotzer shall answer within thirty (30) days of receipt of Plaintiffs' amended complaint. If Plaintiffs fail to replead in compliance with Rule 9(b) within sixty days, this cause of action shall be dismissed without prejudice.

### 5. *Defendant Alario*

In their Complaint, Plaintiffs allege a claim for securities fraud against Defendant Alario. The Court finds that Plaintiffs have failed to plead with particularity facts supporting such allegations against Defendant Alario.

First, in contrast to Defendants John and Mitchell, the Plaintiffs do not allege as to Defendant Alario that he personally made any particular oral false statements, or signed any press releases or SEC forms which contained the alleged misstated earnings.

Second, Plaintiffs' statement in the Complaint that Defendant Alario "attended forecast budget, and senior management meetings" is insufficient. Such statement is conclusory, and the Court will not accept as true conclusory allegations or unwarranted deductions of fact.

Furthermore, the Court finds that, as to Defendant Alario, the Plaintiffs are relying on the group pleading doctrine. Plaintiffs have not plead with particularity facts supporting a strong inference of scienter as to Defendant Alario. Accordingly, the Court requires the Plaintiffs, in order to avoid

dismissal of this cause of action, to replead in order to comply with Rule 9(b) within sixty (60) days from the date of this Order. Defendant Alario shall answer within thirty (30) days of receipt of Plaintiffs' amended complaint. If Plaintiffs fail to replead in compliance with Rule 9(b) within sixty days, this cause of action shall be dismissed without prejudice.

## B. Defendants' Allegations of Failure to State A Claim

To state a securities fraud claim under Section 10(b) and Rule 10b–5, a plaintiff must plead (1) a misstatement or omission; (2) of a material fact; (3) made with scienter, (4) on which the plaintiffs relied; and (5) that proximately caused the plaintiffs' injuries. *Id.* (citations omitted). *Southland,* 365 F.3d at 362.

Here, the Plaintiffs allege securities fraud in violation of Section 10(b) of the Securities Exchange Act. The Defendants assert several grounds on which they argue Plaintiffs have failed to state a claim under Section 10(b) and Rule 10b–5.[7] The issue is whether the Plaintiffs have sufficiently plead each element of a securities fraud claim as to Corporate Defendant Key Energy, Defendant John, and Defendant Mitchell. The Court declines at this time to address whether Plaintiffs have stated a claim as to Defendant Byerlotzer and Defendant Alario, as the Court has ordered the Plaintiffs to replead as to these Defendants.

### Falsity

■ As to the first element, the Court finds that the Plaintiffs have sufficiently plead falsity in their complaint. The Court finds Key Energy's announcement of the need to restate its earnings constitutes an admission that its public filings are false. A similar finding was made by the court in *In re Fleming Cos. Inc., Secs. & Derivative Litig.,* No. 5–03–MD–1530, 2004 U.S. Dist. LEXIS 26488 (E.D. Tex. June 10, 2004). As here, the defendants in *Fleming* had not, as of the time of the filing of plaintiffs' complaint and resolution of defendants' motions to dismiss, actually restated their earnings or announced the size of the restatement. *Id.* at *4. The *Fleming* court rejected the defendants' motions to dismiss, stating, "the announcement of the need to restate earnings constitutes an admission that the information contained in the public filings is false." *Id.* at *75. Similarly, Key Energy had not filed the restatement at the time the complaint was filed. Further, Key Energy has not filed a restatement of the company's earnings for the relevant time period. Therefore, the Court finds the Plaintiffs have sufficiently plead falsity, i.e. the first element of a securities fraud claim.

### Materiality

■ A statement of fact is "material" if there is a substantial likelihood that a reasonable investor would consider the information important in making a decision to invest. *ABC Arbitrage,* 291 F.3d at 359. However, projections of future perform-

---

7. The Court shall address only the first three elements of a securities fraud claim. In Plaintiffs' Motion, the Lead Plaintiff states that the Defendants concede the Plaintiffs sufficiently allege reliance, as Plaintiffs have shown that the fraud-on-the-market doctrine applies. *See* Pls.' Mot. at 8. Further, Plaintiff asserts the Defendants concede the Plaintiffs sufficiently allege loss causation. *Id.* In their Motions to Dismiss, the Defendants argue Plaintiffs' Complaint fails to plead particularly facts showing the falsity and materiality of the alleged misstatements or facts that raise a strong inference of scienter. As the Defendants did not address the last two elements of reliance and causation in their Motions, the Court declines to address these issues as they do not appear to be contested by the parties.

ance not worded as guarantees are generally not actionable under federal securities laws as a matter of law. *Id.* "Additionally, it is well-established that generalized positive statements about a company's progress are not a basis for liability. As such, statements that are predictive in nature are actionable only if they were false when made. However, the materiality of predictions is analyzed on a case-by-case basis." *Id.*

The first issue is whether the financial statements signed by Defendants John and Mitchell are material. The second issue is whether the statements made by Defendant John in press releases and conference calls with analysts are material.

### 1. *Defendants John and Mitchell—Financial Statements*

██ As to the financial statements signed and certified by Defendants John and Mitchell, the Court finds such statements to be material. In the *Fleming* case, as discussed above, the defendant company announced it would be restating its reported earnings for 2001 and 2002. *Fleming,* 2004 U.S. Dist. LEXIS 26488 at *4. As here, however, the company in *Fleming* did not, as of the time of the filing of Plaintiffs' complaint and the resolution of Defendants' Motion to dismiss, actually restate or announce the size of the proposed restatement. *Id.* The *Fleming* court, in rejecting the defendants' motion to dismiss, stated, "There is no reasonable argument that could be made that the proposed restatement, even though it has not yet occurred, is anything other than a material one." *Fleming* at *75.

Plaintiffs have plead that the restatement and planned write-down of $165–195 million represents nearly 22% of the value of Key Energy's total fixed assets. *See* Pls. Compl. ¶¶ 54, 121. Plaintiffs argue in their Response to Defendants' various Motions to Dismiss that it is unfathomable to believe that any reasonable investor would view the disappearance of 22% of a company's value to be anything but material. *See* Pls. Mot. at 31. The Court agrees with the Plaintiffs. Therefore, the Court finds the financial statements signed by Defendant John and Mitchell to be material.

### 2. *Defendant John—Press Releases and Conference Calls with Analysts*

In his Motion, Defendant John argues, first, that the majority of the identified statements are mere "puffery," generalized positive statements about Key Energy's competitive strengths or future prospects that are not actionable because they are immaterial. Second, Defendant argues Plaintiffs' claims relating to forward-looking statements are barred by the safe harbor provisions of the PSLRA. Accordingly, the Court must determine whether Plaintiffs' alleged misstatements are too generalized to be actionable and if not, whether any otherwise material statements that include future projections are protected under the safe harbor provision as forward-looking statements.

#### *Puffery*

██ Defendant John argues in his Motion to Dismiss that the Plaintiffs in their Amended Complaint have attempted to identify statements made by John that they claim were misleading or false, but that the majority of the identified statements are merely "puffery." *See* John's Mot. at 3. "Puffery" refers to generalized positive statements about a company's competitive strengths or future prospects that are not actionable because they are immaterial. *Southland,* 365 F.3d at 372. Non-actionable puffery are statements "of the vague and optimistic type that cannot support a securities fraud action. . . . and

contain no concrete factual or material misrepresentation." *Id.* (citation omitted).

### 1. Press Releases

■ Plaintiffs alleged the following statements are misrepresentations in the July 29, 2003 press release. Specifically, Plaintiffs plead that Defendant John, in commenting on the operating results in the company's press release, stated:

> We are pleased with the strength in activity levels, both in our U.S. and international operations.... Based on current activity and anticipated increases in demand for our services, we expect to see continued improvement in our operating results over the next several quarters.... A prolonged, modest upcycle, which we believe we are currently in, should yield tremendous benefits to our stakeholder. Our ability to generate strong free cash flow will allow us to continue our efforts in upgrading equipment, investing in safety and training and introducing technology. We will continue to reduce debt and strengthen the balance sheet.

*See* Pls. Compl. ¶ 102. The Court concludes that these statements are not too generalized or vague.

Plaintiffs plead the following statements are alleged misrepresentations in the October 29, 2003 press release. Specifically, Plaintiffs plead that Defendant John, commenting on Key Energy's operating results for the quarter ended September 30, 2003, stated:

> While current activity levels have moderated, the Company is exceptionally well positioned and is in fact executing on its near-term and three-year stated objectives. During the quarter and year to date, our strong cash flow after capital expenditures, supported by our strong maintenance base of business, has allowed us to continue to reduce debt, expand our rental tool and international operations, as well as launch our technology initiatives.... with our strong cash position, new bank facility and improved safety performance, we expect to see a substantial decrease in our fixed cost structure in 2004.... we expect that at current activity levels, operating costs should decrease between $5 and $10 million annually as a result of reduced insurance and workers compensation costs as well as improved operating efficiencies anticipated from our technology initiatives and preventive maintenance programs.

*See* Pls. Compl. ¶ 111. The Court concludes that these statements are not too generalized or vague.

Plaintiffs plead the following statements are alleged misrepresentations in the February 17, 2004 press release. Specifically, Plaintiffs plead Defendant John, reporting on Key Energy's business and outlook, stated:

> Over the past year, Key has demonstrated substantial operating improvements and is prepared for what we believe will be a prolonged period of stable activity levels in the North American oil and natural gas markets....
>
> In addition to all the improvements made during 2003, we are especially well positioned for 2004.... Based on current activity levels, as well as our expectations for increased drilling and workover activity later this year, we believe that earnings per diluted share for 2004 will total between $0.35 and $0.46, excluding debt retirement costs.
>
> With our 2004 objectives set, we intend to benefit from our strong operating leverage.... As always, we will continue to focus on free cash flow. With respect to the balance sheet, having just retired our 14% Notes, we now turn our attention to Key's $275 million of 8⅜% Notes

which are callable on March 1, 2005. Assuming no material change in interest rates, we anticipate calling those Notes which will generate additional annual interest savings of over $10 million annually. This, along with all of our other ongoing cost reduction initiatives and the prospect of a prolonged upcycle due to strong North American gas markets, should make for a meaningful improvement in results into 2005.

*See* Pls. Compl. ¶ 119. The Court concludes that these statements are not too generalized or vague.

Accordingly, the Court finds the statements at issue made by Defendant John in said press releases not to be of the vague and optimistic type containing no concrete factual or material misrepresentations that cannot support a securities fraud action. Thus, the Court finds said statements are not mere puffery, and are not so vague as to be not actionable.

### 2. *Conference Calls*

 Plaintiffs allege the following alleged misrepresentations in Key Energy's April 29, 2003 conference call with analysts, in which Defendant John stated:

> Clearly June will be a stronger quarter than March, and obviously we won't have the operating inefficiencies because of the weather. This will result, we believe, in revenues of $225 to $240 million. Earnings per share of 4 cents to 7 cents. And we expect capital expenditures to come in between $20 and $23 million. So we feel that we're very well-positioned in a robust natural gas market. . . . We think the company, again, is set again for 2003 and 2004 to show very favorable comparisons to the prior period in previous years.

*See* Pls. Compl. ¶ 96. The Court concludes that these statements are not too generalized or vague.

Plaintiffs plead in their Complaint the following alleged misrepresentations in the July 29, 2003 conference call with analysts by Defendant John. Specifically, Defendant John stressed that the company had very strong cash flow during the quarter. Initially, in Defendant John's opening remarks, he stated:

> Our operation for June [*sic*] very solid performance the company's balance sheet continues to strengthen. . . . we expect activity levels to modestly improve in the second half of the year. And most significantly, as we go through the conference call and you look at the press release, look at companies [*sic*] strong cash flow which we believe will continue moving us toward our three-year objectives. . . .

*See* Pls. Compl. ¶ 103. Defendant John concluded the conference call by stating, "[w]e believe that we will continue to execute on a well-defined plan. That will yield good returns for our shareholders." *See Id.* at ¶ 104. The Court concludes that these statements are not too generalized or vague.

Plaintiffs plead in their Complaint the following alleged misrepresentations in the October 29, 2003 conference call with analysts, in which Defendant John stated:

> . . . . the Company is in an excellent financial position and a terrific market position, great cash flow and liquidity, we're able to continue to reduce our cost structure, improve our margins while at the same time have the ability in executing our plan for organic growth both domestically and international. . . . And we think ultimately this will reward the shareholders.

*See* Pls. Compl. ¶ 112. The Court concludes that these statements are not too generalized or vague.

Accordingly, the Court finds the statements made by Defendant John in the above conference calls not to be of the vague and optimistic type containing no concrete factual or material misrepresentations that cannot support a securities fraud action. Therefore, the Court finds these statements are not mere puffery, and are not so vague as to be not actionable.

*Safe Harbor Provision*

Second, Defendant John argues that Plaintiffs' claims relating to forward-looking statements are barred by the safe harbor provisions of the PSLRA. Defendant John argues that as all forward-looking statements identified by Plaintiffs in their Amended Complaint were identified as such and accompanied by meaningful cautionary language, and Plaintiffs fail to allege that the forward-looking statements were made with *actual knowledge* of their falsity, the PSLRA safe harbor protects these statements from liability under the 1934 Act.

The safe harbor provision defines forward-looking statements under 15 U.S.C. § 77z–2(i)(1) as:

(A) a statement containing a projection of revenues, income (including income loss), earnings (including earnings loss) per share, capital expenditures, dividends, capital structure or other financial items

(B) a statement of the plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer;

(C) a statement of future economic performance, including any statement contained in a discussion and analysis of financial condition by the management or in the results of operations included pursuant to the rules and regulations of the Commission. . . .

15 U.S.C. § 77z–2(i)(1). The *Southland* court addressed when oral statements qualified for the safe harbor provision:

Oral statements can qualify for the safe harbor if (i) the statement is accompanied by a cautionary statement that the "particular" oral statement is forward-looking and that actual results could differ materially (essentially a formality as to the form of the statement); (ii) the statement is accompanied by an oral statement that additional information that could cause actual results to differ materially is contained in a readily-available written document; (iii) the statement identifies the document or portion thereof containing the additional information; and (iv) the identified document itself contains appropriate cautionary language. 15 U.S.C. §§ 77z–2(c)(2), 78u–5(c)(2) (1996).

*Southland,* 365 F.3d at 371–72. To avoid the safe harbor, plaintiffs must plead facts demonstrating that the statement was made with actual knowledge of its falsity. *Southland,* 365 F.3d at 371 (citing 15 U.S.C. § 78u–5(c)(1)(B); *Nathenson,* 267 F.3d at 409).

▮ The Court declines to address the issue of whether Defendant John's statements qualify as forward-looking statements. Even assuming, *arguendo,* that Defendant John's statements in press releases and conference calls are protected by the PSLRA safe harbor provision as forward-looking statements, the Court finds the Plaintiffs have plead facts demonstrating that Defendant John actually knew, or was severely reckless in not knowing, of the alleged infirmities. The most persuasive factual allegations Plaintiffs have plead surround Defendant John's termination by Defendant Key Energy. As stated above, to avoid the safe harbor, the Plaintiffs must plead facts demonstrat-

ing that the statement was made with actual knowledge of its falsity. Plaintiffs plead in their Complaint facts surrounding the company's May 3, 2004 press release which stated Defendant John was removed from the position of Chief Executive Officer because Key Energy's Board of Directors determined that the company would be best served by a "transition to a management led by an executive who was not involved in the subjects of the possible restatement of previous financial statements and the Audit Committee investigation." *See* Pls. Compl. ¶ 14. Indeed, after the filing of Plaintiffs' Complaint, a recent Key Energy press release stated Defendant John was terminated "for cause." *See* Press Release, Key Energy Services (May 22, 2006). Accordingly, accepting Plaintiffs' facts as true, the Plaintiffs have sufficiently alleged that the statements were made by Defendant John with actual knowledge of their falsity.

Based on the above discussion, the Court finds the financial statements signed and certified by Defendants John and Mitchell to be material. Further, the Court finds the statements made by Defendant John in Key Energy press releases and conference calls to also be material. Finally, as these statements were made by Defendant John and Mitchell pursuant to their official duties, the Court finds said statements made by corporate Defendant Key Energy to be material.

**Scienter**

The third element of a securities fraud claim, scienter, is the most contested between the parties. The Court finds, in accepting as true all factual allegations made by the Plaintiffs in their Complaint, that the Plaintiffs have plead with particularity facts raising a strong inference of scienter on the part of Defendants Key Energy, John, and Mitchell.

The scienter, or state of mind element of a Section 10(b) claim is a "mental state embracing intent to deceive, manipulate, or defraud." *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 430 (5th Cir.2002). Under the PSLRA, "in order to survive a motion to dismiss, a plaintiff alleging a Section 10(b)/Rule 10b–5 claim must now plead specific facts giving rise to a 'strong inference' of scienter." *Abrams*, 292 F.3d at 430 (citation omitted). Severe recklessness can be sufficient to prove scienter under securities fraud. *See id.*

Allegations of circumstantial evidence will suffice to support a strong inference of scienter. *Abrams*, 292 F.3d at 430. Allegations of motive and opportunity alone are not sufficient to plead a strong inference of scienter, although they may enhance other allegations of scienter. *See id.* "Also, the mere publication of inaccurate accounting figures or failure to follow GAAP, without more, does not establish scienter." *Id.* at 432. The pleading of scienter may not be based on the inference that defendants must have been aware of the misstatement based on their positions within the company. *Id.* at 432. "The appropriate analysis.... is to consider whether all facts and circumstances 'taken together' are sufficient to support the necessary strong inference of scienter...." *Id.* at 431.

1. *Scienter as to Corporate Defendant Key Energy*

To determine whether a statement was made by a corporation with the requisite Rule 10(b) scienter, it is appropriate to look to the state of mind of the individual corporate official or officials who make or issue the statement. *Southland*, 365 F.3d at 366. Consequently, the Court will address Plaintiffs' allegations of scienter as to Defendant John and Defendant Mitchell, in order to determine whether the

requisite scienter was plead by Plaintiffs as to Key Energy.

### 2. Scienter as to Individual Defendants John and Mitchell

*The Restatement*

First, the Court finds that Key Energy's need to file a restatement, although not dispositive, adds weight to the scienter calculus due to the magnitude of the Restatement. *See Fleming* at \*35 (citing *In re Triton*, 2001 WL 872019, at \*11, 2001 U.S. Dist. LEXIS 5920 (E.D.Tex. Mar. 30, 2001)). "When the number, size, timing, nature, frequency, and context of the misapplication or restatement are taken into account, the balance of the inferences to be drawn from such allegations *may shift significantly in favor of scienter.*" *Id.* (emphasis added).

■ Here, Key Energy announced on March 29, 2004 it would restate "one or more prior years financial statements." Over two years later, the restatement has yet to be released. Further, the Plaintiffs have plead that the restatement and planned write-down of $165–195 million represents nearly 22% of the value of Key Energy's total fixed assets. *See* Pls. Compl. ¶¶ 54, 121. During the time period in question, Key Energy's financial statements were signed and certified by Defendants John and Mitchell. Accordingly, accepting as true all factual allegations made by the Plaintiffs in their Complaint, the Court finds Key Energy's failure to restate its financial earnings at this time adds weight to Plaintiffs' allegations of a strong inference of scienter.

*Defendant John's Termination*

Second, as to Individual Defendant John only, the Court finds Defendant John's termination by Key Energy to be a factor which supports a strong inference of scienter. The Fifth Circuit has held that the resignations of company officials have no implications on the issue of scienter. *See Abrams*, 292 F.3d at 434. However, unlike *Abrams*, here Defendant John did not resign. As stated before, Key Energy stated in a May 3, 2004 press release that Defendant John was removed from the position of Chief Executive Officer because Key Energy's Board of Directors determined that the Company would be best served by a "transition to a management led by an executive who was not involved in the subjects of the possible restatement of previous financial statements and the Audit Committee investigation." *See* Pls. Compl. ¶ 14. Further, a recent Key Energy press release states he was terminated "for cause." *See* Press Release, Key Energy Services (May 22, 2006). The Court finds this is yet another factor supporting a strong inference of scienter on the part of Defendant Key Energy.

*Allegations of Circumstantial Evidence*

Finally, the Court finds certain additional allegations of circumstantial evidence by the Plaintiffs support a strong inference of scienter. Such factors and allegations include the positions of the Individual Defendants John and Mitchell, Plaintiffs' allegations regarding publication of inaccurate accounting figures and failure to follow generally accepted accounting principles (GAAP), and Plaintiffs' allegations of motive on the part of Defendants John and Mitchell. The Court recognizes that these factors, without more, do not establish scienter. However, the Court finds these facts and circumstances, "taken together," are sufficient to support the necessary strong inference of scienter on the part of the Defendants. Accordingly, the Court finds the above alleged facts, in the aggregate and taken as a whole, are sufficient to support a strong inference of scienter on the part of Defendants John and Mitchell.

Therefore, based on the above discussion, the Court finds Plaintiffs have stated a claim under Section 10(b) and Rule 10b–5 as to Corporate Defendant Key Energy and Individual Defendants John and Mitchell. Thus, it is the Court's opinion that Defendant Key Energy's Motion to Dismiss, Defendant John's Motion to Dismiss, and Defendant Mitchell's Motion to Dismiss should be denied inasmuch as they relate to Plaintiffs' Section 10(b) claims alleged as to these Defendants.

## C. Liability of Individual Defendants Under Section 20(a) Controlling Person Liability

■ In their Complaint, Plaintiffs allege Section 20(a) violations against the Individual Defendants. Section 20(a) of the Securities Exchange Act of 1934 states:

Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a). Section 20(a) is a secondary liability provision; therefore it is necessary that a primary violation be established before liability under Section 20(a) arises. *See ABC Arbitrage,* 291 F.3d at 348. "Control person liability is secondary only and cannot exist in the absence of a primary violation." *See Southland,* 365 F.3d at 383. Plaintiffs must allege that the Defendant had "actual power or influence over the controlled person" as required to impose liability under Section

20(a). *Abbott v. Equity Group, Inc.,* 2 F.3d 613, 620 (5th Cir.1993).

■ "Controlling person liability under Section 20(a) is not subject to the heightened pleading requirements of Rule 9(b), but is instead governed by Rule 8." *Fleming,* 2004 U.S. Dist. LEXIS 26488, at *42. Rule 8 requires only a statement that "gives the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* (quoting *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)).

### 1. *Defendants John and Mitchell*

In Plaintiffs' Complaint, Plaintiffs allege the following as violations of Section 20(a) of the Exchange Act against the Individual Defendants:

The Individual Defendants acted as controlling persons of Key Energy within the meaning of Section 20(a).... By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which the Lead Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by the Lead Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

*See* Pls. Compl. ¶ 207. The Court finds the Plaintiffs have plead statements that give the Defendants fair notice of what the Plaintiffs' claim is and the grounds upon which it rests. Accordingly, the Court is of the opinion the Plaintiffs have sufficiently plead controlling person liability under Rule 8 as to Defendants John and Mitchell.

2. *Defendants Byerlotzer and Alario*

As stated above, control person liability cannot exist in the absence of a primary violation. Here, the Court has found the Plaintiffs failed to allege a primary violation against Defendant Byerlotzer and Defendant Alario under Section 10(b). Accordingly, the Court finds Plaintiffs have further failed to allege a violation of Section 20(a) as to both Defendants Byerlotzer and Alario. Therefore, the Court requires the Plaintiffs, in order to avoid dismissal of this cause of action, to re-plead in order to comply with Rule 9(b) within sixty (60) days from the date of this Order. Defendant shall answer within thirty (30) days of receipt of Plaintiffs' amended complaint. If Plaintiffs fail to replead in compliance with Rule 9(b) within sixty days, this cause of action shall be dismissed without prejudice.

## CONCLUSION

It is **ORDERED** that **Defendant Key Energy Services, Inc.'s** Motion to Dismiss is **DENIED**.

It is **ORDERED** that **Defendant Francis D. John's** Motion to Dismiss is **DENIED**.

It is **ORDERED** that **Defendant Royce Mitchell's** Motion to Dismiss is **DENIED**.

Accordingly, the Court orders **Defendant Key Energy Services, Inc., Defendant John, and Defendant Mitchell** to file their answer with the Court within thirty (30) days from the date of this Order.

It is **ORDERED** that **Defendant James Byerlotzer's** Motion to Dismiss is **GRANTED IN PART**, to the extent that Plaintiffs' claims against Defendant Byerlotzer do not comply with Rule 9(b).

It is **ORDERED** that **Defendant Richard J. Alario's** Motion to Dismiss is **GRANTED IN PART**, to the extent that Plaintiffs' claims against Defendant Alario do not comply with Rule 9(b).

It is **ORDERED that Plaintiffs replead** as to **all claims** alleged against **Defendant James Byerlotzer** and **Defendant Richard J. Alario** to comply with Rule 9(b) within sixty (60) days from the date of this Order. **Defendant Byerlotzer and Defendant Alario** shall answer within thirty (30) days of receipt of Plaintiffs' amended complaint.

It is **FINALLY ORDERED** that if Plaintiffs fail to replead as to Defendant Byerlotzer and/or Defendant Alario within sixty days, the claims against these Defendants shall be dismissed without prejudice.